UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| ROGER COTE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:14-cv-202-jgm |
| | : | |
| ROBERT BOSCH TOOL CORPORATION, | : | |
| | : | |
| Defendant. | : | |
| —————————————————— | : | |

ORDER ON DEFENDANT'S MOTIONS TO PRECLUDE
EXPERT TESTIMONY AND FOR PARTIAL SUMMARY JUDGMENT
(Doc. 27)

I.    Introduction

In this diversity action commenced in September 2014, Plaintiff Roger Cote asserts product liability claims against Defendant Robert Bosch Tool Corporation (Defendant or "Bosch") alleging design defects in a benchtop table saw.  (Doc. 1 ("Compl.").)  Bosch moves, under Federal Rule of Civil Procedure 702, to preclude testimony of Plaintiff's retained expert, Darry Robert Holt, regarding the technological and economic feasibility of incorporating flesh detection technology into a benchtop table saw by 2006, and, under Federal Rule of Civil Procedure 56, for partial summary judgment.  (Doc. 27.)  Cote opposes the motions and Bosch filed a reply.[1]  (Docs. 31, 38.)  For the reasons discussed below, the Court grants in part and denies in part the motion in limine and grants in part and denies in part the motion for partial summary judgment.

II.    Background[2]

Cote alleges he was injured on April 10, 2012, while using a Bosch Model 4000 benchtop

---

[1] Both parties submitted lengthy memoranda with voluminous supporting material.

[2] Unless otherwise indicated, the background facts are gleaned from Cote's amended response to Bosch's statement of material facts (Doc. 32).

table saw manufactured in 2006, when the saw's rotating blade and his left hand made contact, resulting in severe injuries.[3]  The Model 4000, a portable "benchtop" table saw, weighs approximately sixty pounds and the retail price was $500-600.  Cote did not own or purchase the saw; it belonged to his former employer.  The complaint includes claims for strict product liability (Count I), negligence (Count II), and breach of implied warranty of fitness (Count III).  (Compl. ¶¶ 19-29.)  He seeks damages, including punitive damages.  Id. ¶ 31.

At the time of manufacture, the Model 4000 was certified as having met the applicable safety standard.  At distribution, it was equipped with various safety features, including, inter alia, a guarding system, a rip fence, a miter gauge, operating/safety instructions, and on-product warnings.  As of February 2006, flesh detection technology was only available on SawStop, LLC cabinet saws, which weigh several hundred pounds and cost thousands of dollars.  In 2008, SawStop introduced contractor saws with flesh detection technology, the smallest and least expensive of which weigh approximately 245 pounds and cost approximately $1,600.  In March 2015, SawStop generally released its flesh detection benchtop table saw, weighing 79 pounds and retailing for $1299.  Also in March 2015, Bosch announced its plans to introduce a benchtop tablesaw with flesh detection technology that would weigh 78 pounds and retail for $1499.

Cote alleges and Holt opines Bosch failed to use good safety engineering design practice, including incorporating available safety technologies, in the design of the saw which resulted in an unreasonably dangerous product.  Holt opines Bosch failed to incorporate flesh detection technology to sense blade contact by a human and stop the blade to mitigate the severity of injury

---

[3] Plaintiff does not dispute the saw was manufactured in 2006.  (Doc. 31 at 3.)  Though his opposition brief states the injury was to his right hand, the Court assumes this is an oversight given the allegation in the complaint--and Holt's declaration to which the opposition cites--that the injury was to the left hand.  See id.

though the technology was capable of being incorporated into the design of the saw at the time

Bosch manufactured it.  <u>See</u> Compl., Doc. 27-6 (Holt Expert Report) ¶¶ 215, 217.  Additionally,

Cote alleges the saw was unreasonably dangerous as designed and manufactured because the blade

guard was difficult to use and often removed by users, which also removed the splitter designed to

prevent kickbacks.  Cote alleges Bosch should also have used alternative designs using a modular

guard and a riving knife, which would have substantially reduced or eliminated kickbacks.  <u>See</u>

Compl.; Holt Expert Report ¶¶ 213-14.  Bosch does not challenge Holt's opinions on these matters.

III.     <u>Discussion</u>

    A.     <u>Motion to Preclude Expert Testimony</u>

    The decision to admit or exclude expert testimony lies in the Court's discretion and will not

be deemed an abuse of discretion unless it is manifestly erroneous.  <u>Lippe v. Bairnco Corp.</u>,

99 F. App'x 274, 278 (2d Cir. 2004).  The admissibility of testimony is governed by the principles of

Federal Rule of Evidence 104(a).  Under that Rule, a party proffering expert testimony has the

burden of establishing admissibility by a preponderance of proof.  <u>See</u> <u>Bourjaily v. United States</u>,

483 U.S. 171 (1987).  Under Federal Rule of Evidence 702, the Court has discretionary authority to

determine reliability in light of the particular facts and circumstances of the particular case.  <u>Kumho</u>

<u>Tire Co. v. Carmichael</u>, 526 U.S. 137, 158 (1999).  If the Court finds that the evidence is admissible,

the opposing party may still contest the weight of the evidence within the adversarial system.

<u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 267 (2d Cir. 2002).  "Vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence."  <u>Daubert v.</u>

<u>Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 596 (1993).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702's requirement that the evidence assist the trier of fact to understand the evidence or determine a fact in issue is essentially a requirement that the evidence be relevant. Daubert, 509 U.S. at 591. In the context of scientific evidence, the issue of relevance also has been called "fit." Id. The fit of the facts and methodology to the conclusion does not have to be exact. "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." Amorgianos, 303 F.3d at 267 (internal quotation marks and citation omitted).

Rule 702 also requires the expert testimony be the product of "reliable principles and methods." The Daubert Court set forth five factors for a court to consider in making this determination: (1) whether the theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether the technique's operation is subject to standards governing its application; and (5) the general acceptance within the relevant scientific community. 509 U.S. at 593-94. This list is not exclusive, no single factor is dispositive, and the application of factors depends on the particular circumstances of the particular case. Kumho Tire, 526 U.S. at 150.

4

Finally, the testimony must be based on sufficient facts or data.  The term "data" encompasses the reliable opinions of other experts and "facts or data" is broad language allowing an expert to rely on hypothetical facts supported by the evidence.  Fed. R. Evid. 702 advisory committee's note.  The Court's inquiry must focus on the methodology used by the expert, and not the conclusions reached.  Daubert, 509 U.S. at 595.  The Court, however, is not obligated to accept a conclusion that does not reliably flow from the facts available and methodologies used.  Amorgianos, 303 F.3d at 266 (citation omitted).

Cote has disclosed Darry Robert Holt as an engineering expert.  Holt is a mechanical engineer and registered professional engineer in Massachusetts, and also has a law degree.  (Doc. 31-29 (Holt Prof'l Resume).  He has approximately ten years of experience in private industry engineering positions and 38 years of experience as a consulting engineer "evaluating the safety design and condition of hundreds of machines and products of all types, including table saws." (Doc. 31-28 (Holt Decl. ¶ 3.)  Since 1989, he has been employed at Holt Associates, P.C., a consulting engineering services firm.  (Doc. 31-29.)

Holt prepared a 48-page expert report dated July 28, 2015.[4]  (Docs. 26-6, 26-7.)  Bosch argues Holt's opinions regarding the technological and economic feasibility of incorporating flesh detection technology should be excluded because he is not qualified and his opinions are not reliable.  (Doc. 27-1.)  Specifically, with regard to reliability of his technological feasibility opinions, Bosch argues neither Dr. Gass's, of SawStop LLC, prior statements nor Holt's cursory inspections of select saws provide the requisite basis for his opinions, and other courts have excluded his opinions.  Id.  Bosch asserts the issue is not whether flesh detection technology could be

---

[4] The Court references Defendant's Exhibit C because it is signed.  The version of the Holt expert report Cote filed, attached to Holt's Declaration, is dated July 24, 2015, and is unsigned. (Doc. 31-34.)

incorporated into a benchtop saw like the Bosch Model 4000, but when it could have been incorporated.  (Doc. 27-1 at 2; Doc. 38 at 1.)  Bosch also seeks exclusion of Holt's opinions regarding economic feasibility of incorporating flesh detection technology.  (Doc. 27-1 at 3.)

Cote argues Holt is "eminently" qualified given his credentials, experience investigating table saws and flesh detection technology, testing, inspection and analysis of saws with the technology, and that numerous courts have found him qualified.  He also argues Holt's opinions are reliable as they are based on his training, experience, testing and research, and not only on the opinion of Dr. Gass.  (Doc. 31.)

The Court finds, as have many others in recent decisions, that Holt is qualified to opine on the technological feasibility of incorporating flesh detection technology.  See, e.g., Anderson v. Techtronic Indus. N. Am., Inc., No. 6:13-cv-1571, 2015 WL 7429060, at *7 (M.D. Fla. Nov. 23, 2015) ("Defendant's position that Mr. Holt is not qualified to render expert opinions on table saw design and the efficacy and technological feasibility of flesh detection technology simply holds no weight.").  Given Holt's education and experience in mechanical engineering and his inspection and his testing and analysis of saws with the technology, including over 4,000 hours of investigation since 2004 (Holt Decl. ¶ 186), the Court concludes he is qualified.

With regard to economic feasibility, Cote states Holt "does not intend to offer opinions on 'economic feasibility,' which [Bosch] equates with an economic/market analysis geared at how much consumers would pay for flesh detection."  (Doc. 31 at 35 n.20.)  Accordingly, Holt will not be allowed to offer expert opinions regarding economic feasibility of incorporating flesh detection technology.  Cote does intend, however, to offer Holt's testimony regarding the cost of incorporating flesh detection.  (Doc. 31 at 35-37.)  The Court finds Holt is not qualified as an

economic expert and, while courts have split on this issue[5], Holt will not be allowed to offer expert testimony regarding the cost of incorporating flesh detection technology.  Bruskotter, 2015 WL 5173050, at *4 (finding Holt not qualified as an expert on the cost of implementing flesh detection technology).  The trier of fact may consider the documents and evidence on cost of implementation referenced by Cote (Doc. 31 at 35), to the extent admissible; Holt's testimony would not assist the trier of fact in understanding the evidence.

    Lastly, Bosch challenges the reliability of Holt's opinion that it was technologically feasible to incorporate flesh detection technology at the time the saw was manufactured in 2006.  Holt has extensively reviewed flesh detection and braking technology, beginning with a visit to SawStop's facility in 2004 and continuing through 2015 with inspections of Bosch's and SawStop's benchtop saws with flesh detection technology, including comparing the SawStop model to other consumer table saws.  Holt Expert Report at 37-38.  He estimates he has spent over 4,000 hours investigating all aspects of--including personally testing--flesh detection technology and its application to various types, models and sizes of saws.  Id. at 36-39.  The Court, in its discretion, finds Holt's opinion regarding technological feasibility at the time the saw was manufactured is sufficiently reliable.[6]  Accordingly, Holt may offer his opinion regarding the technological feasibility of incorporating flesh detection technology at the time the saw was manufactured.

    As noted above, Bosch may contest the weight of the evidence within the adversarial system through vigorous cross-examination, presentation of contrary evidence, and advocating for careful

---

    [5] For example, compare Bruskotter v. Robert Bosch Tool Corp., No. 6:13-cv-1841, 2015 WL 5173050, at *4 (M.D. Fla. Sept. 3, 2015) with Savio v. Robert Bosch Tool Corp., No. 14-cv-2663 (E.D.N.Y. July 7, 2015) (order denying motion in limine).

    [6] The parties cite many prior cases both allowing and excluding certain opinion testimony of Holt.

instructions on the burden of proof.  <u>Daubert</u>, 509 U.S. at 596; <u>Amorgianos</u>, 303 F.3d at 267.

      B.      <u>Motion for Partial Summary Judgment</u>

As Bosch's motion for summary judgment on Cote's strict liability, negligence and breach of warranty claims is based on the preclusion of Holt's testimony regarding the feasibility of incorporating flesh detection technology, <u>see</u> Doc. 27 at 1, Doc. 38 at 14, the motion is denied.

Bosch asserts Cote's claim for punitive damages fails as a matter of law because Cote has not pled sufficient facts to establish a claim.  (Doc. 27 at 2.)  Cote states he is not seeking punitive damages.  (Doc. 31 at 38.)  Accordingly, no claim for punitive damages will be allowed.

Lastly, Bosch moves for summary judgment on Cote's claim for breach of implied warranty of fitness because there is no evidence from which a reasonable jury could conclude a warranty existed.  (Doc. 27 at 2.)  Cote does not oppose the dismissal of his warranty claim.  (Doc. 31 at 38.)  Accordingly, Bosch's motion for summary judgment is granted on this claim; Count III of the complaint is dismissed.

IV.    <u>Conclusion</u>

For the reasons stated above, Bosch's motion in limine (Doc. 27) is granted in part and denied in part and the motion for partial summary judgment (Doc. 27) is granted in part and denied in part.

Holt will not be allowed to offer expert opinions regarding economic feasibility of incorporating flesh detection technology.  Holt may offer his opinion regarding the technological feasibility at the time the saw was manufactured.

The summary judgment motion is denied as to Cote's strict liability and negligence claims, and granted as to Cote's breach of implied warranty of fitness claim and claim for punitive damages. Accordingly, Count III of the complaint is dismissed and Cote may not seek punitive damages.

The parties engaged in an Early Neutral Evaluation ("ENE") session on July 15, 2015, with no settlement or stipulation to narrow the scope of the dispute.  See Doc. 23.  As the report of ENE does not state whether the parties would be scheduling another ENE session, the Court encourages, in light of this ruling, consideration of a second ENE session.  The discovery order provides the case was to be ready for trial by January 13, 2016.  (Doc. 19.)  As no other motions were filed by the motions deadline, in the event the case does not settle or a second ENE is not scheduled, the case will be placed on the next available trial calendar after May 1, 2016.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 2nd day of March, 2016.

/s/ J. Garvan Murtha
Hon. J. Garvan Murtha
United States District Judge